J-S17035-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MAURICE SWEETING | : | |
| | : | |
| Appellant | : | No. 2263 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 19, 2025
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0003617-2023

BEFORE:   PANELLA, P.J.E., STABILE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:              **FILED JULY 30, 2026**

Appellant, Maurice Sweeting, appeals from the judgment of sentence imposed by the Court of Common Pleas of Delaware County after the court found him guilty of possession of a firearm by a prohibited person, firearm not to be carried without a license, knowing or intentional possession of a controlled substance, possession of a small amount of marijuana-personal use, use or possession of drug paraphernalia, and two summary Vehicle Code violations.[1] His counsel has filed a brief and a petition to withdraw as counsel pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] ***See*** 18 Pa.C.S. §§ 6105(a)(1) and 6106(a)(1); 35 P.S. § 780-113(a)(16), (31)(i), (32); and 75 Pa.C.S. §§  1332(b)(3) and 1786(f), respectively.

*Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009). Upon review, we deny the petition to withdraw as counsel with instructions below.

The trial court summarized the facts of this case as follows:

On June 21, 2022, at approximately 10:00 p.m., Officer Jabril Muhammad of the Colwyn Borough Police Department was on patrol in a marked police vehicle traveling westbound on Walnut Street in Delaware County. Officer Muhammad observed a gold Chevrolet minivan with a tinted license-plate cover that obscured the plate, in violation of 75 Pa.C.S. [§] 1332(b)(3) (prohibiting display of an illegible or obscured registration plate). Based upon this violation, the officer lawfully initiated a traffic stop.

The driver was identified as [Appellant], who produced a driver's license, vehicle registration, and proof of insurance. The officer noted that the insurance card expired as of October 1, 2022, and [Appellant] was unable to provide proof of [] current coverage. During this interaction, Officer Muhammad observed that [Appellant] was sweating profusely, trembling, and avoiding eye contact.

For officer safety, [Officer] Muhammad asked [Appellant] to exit the vehicle. As [Appellant] did so, he reached for a backpack located in the center of the vehicle and placed his hands inside the bag. The officer instructed him to drop the backpack; [Appellant] initially refused and stared blankly, prompting the officer to draw his service weapon and repeat the command. Approximately ten seconds later, [Appellant] complied and stepped from the vehicle.

Officer Muhammad moved [Appellant] between the patrol car and the stopped vehicle to avoid traffic. When asked about the bag, [Appellant] stated that it contained "a little bit of weed" and presented a medical-marijuana card. The officer then asked if he could retrieve the marijuana; [Appellant] declined. Based on [Appellant's] nervous behavior, refusal to permit inspection, and the officer's experience in firearm-related investigations, [Officer] Muhammad suspected the bag contained a weapon. He asked whether there was a gun inside, and [Appellant] responded that there was. [Officer] Muhammad immediately detained [Appellant] and secured a search warrant for the backpack.

Execution of the warrant yielded a black Ruger semiautomatic pistol, loaded with seven live rounds and one chambered round,

and two clear baggies containing marijuana. A check with the Pennsylvania State Police revealed that [Appellant] did not possess a valid license to carry a firearm. Laboratory testing by the Delaware County Criminal Investigation Division confirmed the weapon was operable.

Trial Court Opinion, 10/20/25, at 2-3.

On October 23, 2022, Appellant was charged with the above-mentioned offenses. *See* Bills of Information, 10/23/22. On June 12, 2024, Appellant filed a motion to suppress. *See* Motion to Suppress, 6/12/24. At the suppression hearing, defense counsel alleged that the traffic stop was improperly extended without the requisite level of suspicion and that Officer Muhammad questioned Appellant without informing him of his *Miranda*[2] rights. *See* N.T. Suppression Hearing, 6/13/24, at 4-5. The Commonwealth presented live testimony from Officer Muhammad who described the events leading to Appellant's arrest. *See id.* at 8. On cross-examination, Officer Muhammad confirmed that, when he first approached Appellant's car and subsequently reviewed his information, there was no indication that Appellant had firearms, was moving suspiciously in the vehicle, or gave any indication that there was criminal activity prior to the officer asking Appellant to exit the vehicle. *See id.* at 21. On August 28, 2024, the trial court denied Appellant's motion to suppress. *See* Order (denying motion to suppress), 8/28/24.

On March 21, 2025, Appellant waived his right to a jury trial and proceeded to a non-jury trial where facts consistent with the above summary

_____

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

were stipulated to by both parties. *See* N.T. Trial, 3/21/25, at 4-7. The trial court found Appellant guilty of the above-referenced offenses. *See* Verdict, 3/24/25. On July 14, 2025, the trial court issued an aggregate sentence of two-and one-half years to six years of incarceration. *See* Order (sentencing), 7/14/25. Appellant's trial counsel filed a motion for reconsideration of sentence, which the trial court subsequently granted. *See* Motion to Reconsider Sentence, 6/17/25; Order (granting motion for reconsideration), 8/14/25. Afterwards, the trial court re-sentenced Appellant to an aggregate term of two-and one-half to five years of incarceration. *See* Amended Order (sentencing), 8/14/25.

Appellant filed a timely notice of appeal, and he and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925. *See* Notice of Appeal, 8/28/25; 1925(b) Order, 9/3/25; Rule 1925(b) Statement, 9/22/25; Trial Court Opinion, 7/21/25.

Counsel who believes an appeal is frivolous and seeks to withdraw from representation under *Anders* must:

> (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the *Anders* brief to the appellant; and (3) advise the appellant that he or she has the right to retain private counsel or raise additional arguments that the appellant deems worthy of the court's attention.

*Commonwealth v. Gabra*, 336 A.3d 1052, 1056 (Pa. Super. 2025) (citation omitted; some parentheses added). In *Commonwealth v. Santiago*, 978

A.2d 349, 361 (Pa. 2009), our Supreme Court set forth clear standards for the content of the **Anders** brief, requiring that the brief:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. Once counsel has satisfied the **Anders** requirements, this Court has a duty to conduct its own review of the trial court's proceedings and make an independent determination whether the appeal is wholly frivolous. **See Commonwealth v. Thompson**, 333 A.3d 461, 466 (Pa. Super. 2025) (citations omitted).

After careful review, we conclude that counsel has complied with the **Anders** standard for withdrawal. Counsel filed an **Anders** brief that met the requirements set forth in **Santiago**.[3] Further, counsel filed an application to withdraw from representation of Appellant and stated that she has "conscientiously and thoroughly reviewed the record of the proceedings in this matter." Application for Leave to Withdraw, 12/2/25, at ¶ 4. Additionally, counsel's letter to Appellant, advising him of his right to proceed *pro se* or

_____

[3] Counsel's **Anders** brief provides a summary of the procedural and factual history. **See Anders** Brief at 1. Counsel referred to the facts that arguably support the appeal. **See id.** at 3-5. Finally, counsel states that the appeal is frivolous and explains her reasoning with discussion of the facts of the record and relevant case law. **See id.** at 6-7.

with the assistance of newly-retained counsel, is attached as an exhibit to the application to withdraw and states that counsel appended a copy of the *Anders* brief to the letter. *See id.* at ¶ 6-7, Exhibit A (*Anders* Letter). Therefore, we conclude that counsel has met the withdrawal requirements of *Anders* and we must independently review the record to determine if Appellant's issues are frivolous and if there are any other, non-frivolous issues that he could pursue. *See Thompson*, 333 A.3d at 466.

Counsel addresses whether the trial court erred by denying Appellant's suppression motion on the basis that the traffic stop was improperly extended without the requisite level of suspicion required constitutionally. *See* Appellant's Brief at 8-13.

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty is to determine if the suppression courts properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Brinkley*, 331 A.3d 85, 90-91 (Pa. Super. 2025) (citation omitted). Our scope of review of suppression rulings includes only the

suppression hearing record and excludes evidence elicited at trial. *See Commonwealth v. Singleton*, 169 A.3d 79, 82 (Pa. Super. 2017).

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee an individual's freedom from unreasonable searches and seizures." *Commonwealth v. Coles*, 317 A.3d 659, 633 (Pa. Super. 2024) (citation omitted). "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." *Commonwealth v. Reppert*, 814 A.2d 1196, 1201 (Pa. Super. 2002) (citation omitted).

This Court has recognized three categories of interactions between members of the public and the police:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Way*, 238 A.3d 515, 518 (Pa. Super. 2020) (citation omitted). Thus, pursuant to the Fourth Amendment, a person may not be lawfully seized, either by means of an investigative detention or a custodial detention, unless the police possess the requisite level of suspicion.

Appellant's issue is related to two investigative detentions: the traffic stop, and the secondary investigation after Appellant exited his vehicle. *See* Appellant's Brief at 5. For traffic stops, our Court has set forth the following legal precepts:

> A police officer has the authority to stop a vehicle when he or she has reasonable suspicion that a violation of the [V]ehicle [C]ode has taken place for the purpose of obtaining necessary information to enforce provisions of the code. [*See*] 75 Pa.C.S.[] § 6308(b). However, if the violation is such that it requires no additional investigation, the officer must have probable cause to initiate the stop. [*See*] *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010) [(*en banc*)].
>
> Put another way, if the officer has a legitimate expectation of investigatory results, the existence of reasonable suspicion will allow the stop – if the officer has no expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion.

*Commonwealth v. Spence*, 290 A.3d 301, 312 (Pa. Super. 2023) (quoting *Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa. Super. 2013).

> Furthermore:
>
> Like a *Terry*[ *v. Ohio*, 392 U.S. 1 (1968),] stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission — to address the traffic violation that warranted the stop and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate th[at] purpose. Authority for the seizure thus ends when tasks tied to the traffic infraction are — or reasonably should have been — completed.

*Commonwealth v. Sanchez*, 326 A.3d 926, 934 (Pa. Super. 2024) (quoting *Rodriguez v. United States*, 675 U.S. 348, 354 (2015)).

An officer's mission includes inquiries such as checking the driver's license, checking for outstanding warrants against the driver, inspecting the automobile's registration and the driver's proof of insurance. ***See Commonwealth v. Ross***, 297 A.3d 787, 792 (Pa. Super. 2023) (quoting ***Rodriguez***, 675 U.S. at 355). Moreover, during "a lawful traffic stop, the officer may order the driver of a vehicle to exit the vehicle until the traffic stop is completed, even absent a reasonable suspicion that criminal activity is afoot." ***Id.*** (quoting ***Commonwealth v. Wright***, 224 A.3d 1104, 1109 (Pa. Super. 2019) (citation, ellipses, and brackets omitted)).

Regarding a secondary investigative detention, our Court has held that, "[i]f there is a legitimate stop for a traffic violation...additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions." ***Commonwealth v. Sloan***, 303 A.3d 155, 163 (Pa. Super. 2023) (quoting ***Commonwealth v. Harris***, 176 A.3d 1009, 1020 (Pa. Super. 2017) (quotation marks omitted)).

> The "new detention" must be supported by reasonable suspicion. ***See Commonwealth v. Smith***, 917 A.2d 848 (Pa. Super. 2007).
>
> To establish grounds for "reasonable suspicion"...the officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity.
>
> In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight...to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience. Also, the totality of

- 9 -

the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Id.* at 164 (quoting *Smith*, 917 A.2d at 852 (quotation marks omitted)).

The trial court, in its findings of fact for its order denying Appellant's motion to suppress, indicated that, "under the totality of the circumstances, it is clear that [Appellant] was subject to a lawful investigative detention following a legal traffic stop." Order (denying motion to suppress), 8/28/24, at 9. We agree.

Here, Officer Muhammad observed Appellant had a tinted license plate, illegally rendering the license unreadable at a reasonable distance, in violation of 75 Pa.C.S. § 1332(b)(3). *See* N.T. Suppression Hearing, 6/13/24, at 9. Therefore, the officer had probable cause to initiate the traffic stop. *See Feczko*, 10 A.3d at 1291.

During the lawful traffic stop, Officer Muhammad was permitted to inquire about Appellant's driver status and to ask Appellant to step out of the vehicle, without any further reasonable suspicion. *See* N.T. Suppression Hearing, 6/13/24, at 9, 11; *Ross*, 297 A.3d at 793. Moreover, Officer Muhammad testified that, at the time of the traffic stop, he had been a police officer for almost two years, during which he had recovered more than twenty firearms from vehicles. *See* N.T. Suppression, 6/13/24, at 7. Further, in his experience, he had recovered firearms from inside a backpack, underneath car seats, and in hidden compartments. *See id.*

Officer Muhammad explained that, when he asked Appellant to exit the vehicle, Appellant stuffed his hand inside a backpack located in the center console of the vehicle. **See** N.T. Suppression Hearing, 6/13/24, at 11. He observed that Appellant was "sweating profusely for it to be October. He was very, very nervous. His hands were trembling. He was avoiding making eye contact with me." **Id.** at 11. When Appellant stuck his hand inside the bag, Officer Muhammad ordered him to drop it, Appellant gave the officer a "blank stare" and waited ten seconds prior to dropping the bag to exit the vehicle. **See id.** at 12. On cross-examination, Officer Muhammad stated that, "based on [his] experiences with traffic stops, when I ask somebody to step out of the vehicle[,] they don't just pick up a bag and just stare at you." **Id.** at 22.

Based on those observations, together with Officer Muhammad's training and experience recovering firearms from concealed locations in vehicles, the officer reasonably suspected that Appellant was armed and dangerous. **See Sloan**, 303 A.3d at 163. Additionally, Appellant's furtive movements along with his apparent nervousness provided ample reasonable suspicion for a separate detention to ask Appellant about the contents of his backpack, even though the initial detention with respect to the initial traffic stop had not concluded at the time of the furtive movement, giving rise to an additional basis for detention. **See Commonwealth v. Buchert**, 68 A.3d 911, 916-17 (Pa. Super. 2013) ("The combination of [defendant's] furtive movement of leaning forward and appearing to conceal something under his seat, along with his extreme nervousness and the nighttime stop, was

sufficient to warrant a reasonable police officer to believe that his safety was in danger and that [defendant] was in immediate control of a weapon.").[4] Therefore, we find the court did not abuse its discretion in denying Appellant's motion to suppress. *See **Brinkley***, 331 A.3d at 90-91.

Although we agree with counsel that the suppression issue identified in her ***Anders*** Brief is frivolous, our independent review has revealed an issue related to the sufficiency of evidence for Appellant's of possession of a firearm by a prohibited person. We note that, in addition to addressing the suppression issue included in Appellant's brief, the Commonwealth discusses the sufficiency of the evidence supporting Appellant's convictions for possession of a firearm by a prohibited person and firearms not to be carried without a license. ***See*** Appellee's Brief at 13-15. Specifically, the Commonwealth concedes that the evidence was insufficient to sustain Appellant's conviction under Section 6105 because the record contains no evidence establishing that Appellant had a prior disqualifying conviction rendering him ineligible to possess a firearm. ***See id.*** at 14.[5] Upon review of

---

[4] Both the suppression and trial transcripts confirmed that Appellant's traffic stop was at 10:00 p.m., which is nighttime. ***See*** N.T. Suppression Hearing, 6/13/24, at 7-8; N.T. Trial, 3/21/25, at 4; ***see also Buchert***, 68 A.3d at 916-17 (holding nighttime was a circumstance that, along with other articulable facts, elevated officer's suspicion to a constitutionally sufficient level).

[5] "In order to convict a defendant for possession of a firearm by a prohibited person, the Commonwealth must prove that defendant was previously convicted of a specific offense enumerated in [S]ection 6105." ***Commonwealth v. Hewlett***, 189 A.3d 1004, 1009 (Pa. Super. 2018) (citation omitted); ***see also*** 18 Pa.C.S. § 6105(a) and (b).

the record, we agree with the Commonwealth that there is an issue of arguable merit necessitating additional review by Appellant's counsel. As such, it would be improper for us to grant counsel's withdraw request.

Accordingly, Counsel shall file an advocate's brief addressing the sufficiency issue to sustain Appellant's conviction for possession of a firearm by a prohibited person. Counsel's brief shall be filed within thirty (30) days of this decision.

Petition to withdraw as counsel denied. Jurisdiction retained.